No. 25-1792

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

CASA, INC.,

*Plaintiff-Appellant,*

v.

KRISTI NOEM, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Maryland

**OPPOSITION TO EMERGENCY MOTION FOR POSTPONEMENT
OF AGENCY ACTION PENDING APPEAL**

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant
Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

WILLIAM H. WEILAND
CRAIG A. NEWELL, JR.
ANNA DICHTER
*Senior Litigation Counsels*

LAUREN BRYANT
CATHERINE ROSS
AMANDA SAYLOR
ERIC SNYDERMAN
JEFFREY M. HARTMAN
 *Trial Attorneys, Office of
  Immigration Litigation*
*P.O. Box 868, Ben Franklin
  Station*
*Washington, D.C. 20004*
*(202) 532-4404*
*Jeffrey.M.Hartman@usdoj.gov*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................1

STATEMENT...................................................................................4

    I.    LEGAL BACKGROUND.................................................4

    II.    FACTUAL BACKGROUND..............................................6

    III.    PROCEDURAL BACKGROUND.....................................9

ARGUMENT ...................................................................................12

    I.    THE GOVERNMENT WILL SUCCEED ON THE
        MERITS..............................................................13

        A.    Section 1254a Bars Judicial Review of Appellant's APA
             Claim.................................................................13

        B.    Appellant Cannot Show a Strong Likelihood of Success
             on Its APA Claim..............................................17

    II.    THE BALANCE OF EQUITIES DOES NOT SUPPORT
        RELIEF...............................................................21

CONCLUSION....................................................................26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*CASA de Maryland, Inc. v. Trump*,
  971 F.3d 220, 230 (4th Cir. 2020)...................................................................12

*DCH Reg'l Med. Ctr. v. Azar*,
  925 F.3d 503 (D.C. Cir. 2019)......................................................................16

*Dep't of Commerce v. New York*,
  588 U.S. 752 (2019).....................................................................................20

*Fiallo v. Bell*,
  430 U.S. 787 (1977)..............................................................................14, 22

*Hotel & Rest. Emps. Union, Loc. 25 v. Smith*,
  846 F.2d 1499 (D.C. Cir. 1988)....................................................................14

*INS v. Legalization Assistance Project*,
  510 U.S. 1301 (1993)....................................................................................22

*Maryland v. King*,
  567 U.S. 1301 (2012)....................................................................................21

*McNary v. Haitian Refugee Center, Inc.*,
  498 U.S. 479 (1991).....................................................................................15

*Miranda v. Garland*,
  34 F.4th 338 (4th Cir. 2022) .......................................................................22

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm
Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)..............................................................................19, 20

*Nken v. Holder*,
  556 U.S. 418 (2009).........................................................................12, 17, 21, 22

*Noem v. Nat'l TPS Alliance*,
  No. 24A1059, 2025 WL 1427560 (S. Ct. May 19, 2025) ...............................1, 23

ii

*Patel v. Garland,*
    596 U.S. 328 (2022)..................................................................14

*Ramos v. Wolf,* 975 F.3d 872 (9th Cir. 2020), *vacated upon rehearing en banc,*
    59 F.4th 1010 (9th Cir. 2023) .............................................16, 20

*Starbucks Corp. v. McKinney,*
    602 U.S. 339 (2024)..................................................................24

*Trump v. CASA, Inc.,*
    2025 WL 1773631 (June 27, 2025) ......................1, 21, 23, 24

*United States v. Tohono O'odham Nation,*
    563 U.S. 307 (2011)..................................................................14

## **STATUTES**

5 U.S.C. § 705 ................................................................9, *passim*

8 U.S.C. § 1158 ..................................................................................22

8 U.S.C. § 1158(d)(2) ......................................................................23

8 U.S.C. § 1158(d)(3) ......................................................................23

8 U.S.C. § 1229a ..............................................................................22

8 U.S.C. § 1231 ................................................................................23

8 U.S.C. § 1254a(a) ...........................................................................5

8 U.S.C. § 1254a(b)(1) ......................................................................5

8 U.S.C. 1254a(b)(1)(A)..........................................................13, 17

8 U.S.C. § 1254a(b)(1)(C)...................................4, 13, 18, 20, 21

8 U.S.C. § 1254a(b)(2) ......................................................................5

8 U.S.C. § 1254a(b)(3) ....................................................................13

8 U.S.C. § 1254a(b)(3)(A)..................................................................5

8 U.S.C. § 1254a(b)(3)(B)..........................................................................5

8 U.S.C. § 1254a(b)(3)(C)..........................................................................6

8 U.S.C. § 1254a(b)(5)(A)..........................................................2, *passim*

Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978..........................4

## REGULATIONS

8 C.F.R. § 208.7........................................................................................20

8 C.F.R. § 274a.12(c)(8)............................................................................20

8 C.F.R. § 1208.16-.18..............................................................................22

## FEDERAL REGISTER NOTICES

*Designation of Afghanistan for Temporary Protected Status*, 87 Fed. Reg. 30,976 (May 20, 2022) ..........................................................................6

*Designation of Cameroon for Temporary Protected Status*, 87 Fed. Reg. 34,706 (Jun. 7, 2022).........................................................................8

*Extension and Redesignation of Afghanistan for Temporary Protected Status*, 88 Fed. Reg. 65,728 (Sep. 25, 2023) ....................................6

*Extension and Redesignation of Cameroon for Temporary Protected Status*, 88 Fed. Reg. 69,945 (Oct. 10, 2023) ....................................8

*Termination of the Designation of Afghanistan for Temporary Protected Status*, 90 Fed. Reg. 20,309 (May 13, 2025)........................6, 7, 17, 18

*Termination of the Designation of Cameroon for Temporary Protected Status*, 90 Fed. Reg. 23,697 (June 4, 2025) ..........................8, 17, 20

## EXECUTIVE ORDERS

Executive Order No. 14,159..........................................................................20

## INTRODUCTION

Three months ago, a California district court stayed the Secretary of Homeland Security's termination of the 2023 designation for Venezuela for Temporary Protected Status ("TPS"). The Ninth Circuit declined to stay that order pending appeal, but the Supreme Court stepped in to grant that relief, with just one noted dissent. *Noem v. Nat'l TPS Alliance*, No. 24A1059, 2025 WL 1427560 (S. Ct. May 19, 2025). In doing so, the Supreme Court necessarily determined that the Government was likely to succeed on the merits, and also that the balance of harms favored giving effect to the termination during the pendency of the litigation.

When the Supreme Court issues a stay, its decision is binding precedent on application of the stay factors—and lower courts must follow that precedent to resolve materially similar stay requests. *See Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631, at *20-21 (June 27, 2025) (Kavanaugh, J., concurring). And this case is materially similar to *National TPS Alliance*. Appellant here seeks the same relief (a stay) with respect to the same type of agency action (termination of a TPS designation). The only differences are that the aliens here are from Afghanistan and Cameroon, not Venezuela, and that Appellant's claims are even *weaker*. In *National TPS Alliance*, the

Secretary first vacated the prior Secretary's extension of TPS for certain Venezuelans, then terminated it—an extra step that the district court there (incorrectly) found exceeded statutory authority. Those plaintiffs also asserted an equal protection claim—and the district court found likely success on that claim too. Here, by contrast, the Secretary effectuated only a termination. And, on appeal, Appellant advances only a run-of-the-mill arbitrary-and-capricious claim. That is why the district court here recognized that no relief was warranted.

Remarkably, Appellant now asks this Court to grant in the first instance the extraordinary relief of a stay of agency action pending appeal. But if the likely-success and balance-of-harms prerequisites favored the Government in *National TPS Alliance*, they favor the Government here *a fortiori*.

As to likelihood of success, Appellant has none. The statute expressly provides that "[t]here is *no judicial review* of any determination of the [Secretary] with respect to the … termination … of a foreign state." 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). As courts have recognized, that plainly bars Administrative Procedure Act ("APA") claims challenging a Secretary's country-specific determination that TPS is no longer warranted. Appellant pretends instead to challenge a "policy or practice," but that mischaracterizes

both the statute (which draws no such distinction) and its own claim (which seeks to vacate discrete agency actions, not any collateral "policy").

Regardless of labels, the district court acknowledged the lack of any sufficient evidentiary basis to challenge the termination of TPS here. The Secretary addressed all of the relevant statutory factors and reached a reasonable conclusion. Appellant cannot second-guess her discretion-laden, deference-demanding judgment by invoking a *former* Secretary's findings, or by objecting that the *current* Secretary cited the President's Executive Orders. Congress empowered the Secretary—not Appellant—to decide what the "national interest" requires in this area. So even if it were reviewable, this claim would still be utterly meritless.

As to the balance of harms, the Supreme Court has repeatedly made clear in recent weeks that the Government suffers irreparable harm when its policies are enjoined—including when, as here, a court extends TPS that the Secretary determined would be contrary to the national interest. Meanwhile, while Appellant pleads that particular TPS beneficiaries fear persecution in their home countries, nothing prevents them from seeking appropriate relief, such as withholding of removal or protection under the Convention Against Torture ("CAT"). Termination of TPS merely ends the *categorical* and

3

*temporary* protection for *all* Afghans and Cameroonians that the Secretary has determined is no longer warranted or in the national interest.

For all these reasons, the Court should dissolve the administrative stay and deny Appellant's motion for a stay of agency action pending appeal.

## STATEMENT

### I.     Legal Background

In 1990, Congress established a discretionary program for providing temporary shelter in the United States for aliens from countries experiencing armed conflict, natural disaster, or other "extraordinary and temporary conditions" that prevent the aliens' safe return. 8 U.S.C. § 1254a(b)(1)(C); *see* Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978. The program authorizes the Secretary of Homeland Security, "after consultation with appropriate agencies of the Government," to designate countries for TPS if, as relevant here, she finds:

> (A) … that there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety; [or]

> (C) … that there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

8 U.S.C. § 1254a(b)(1).

When the Secretary designates a country for TPS, eligible individuals from that country who are physically present in the United States on the effective date of the designation (and continuously thereafter) may not be removed from the United States and are authorized to work here for the duration of the country's TPS designation. *Id.* § 1254a(a), (c).

As the program's name suggests, the statute instructs that designations will be "temporary." *Id.* § 1254a(a). Initial designations, and any extensions thereof, may not exceed eighteen months. *Id.* § 1254a(b)(2), (3)(C). The Secretary, in consultation with appropriate agencies, must review each designation at least 60 days before the designation period ends to determine whether the conditions for the country's designation continue to be met. *Id.* § 1254a(b)(3)(A). If the Secretary finds that the foreign state "no longer continues to meet the conditions for designation," she "*shall* terminate the designation" by publishing notice in the Federal Register of the determination and the basis for the termination. *Id.* § 1254a(b)(3)(B) (emphasis added). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state

5

is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id.* § 1254a(b)(3)(C).

The TPS statute categorically bars judicial review of the Secretary's TPS determinations: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id.* § 1254a(b)(5)(A).

## II.    Factual Background

Afghanistan.  On May 20, 2022, former Secretary Mayorkas designated Afghanistan for TPS for a period of 18 months due to "ongoing armed conflict" and "extraordinary and temporary conditions."  *Designation of Afghanistan for [TPS]*, 87 Fed. Reg. 30,976, 30,977 (May 20, 2022).  Secretary Mayorkas extended and redesignated TPS for Afghanistan in 2023 for a period of 18 months, until May 2025.  *Extension and Redesignation of Afghanistan for [TPS]*, 88 Fed. Reg. 65,728, 65,728 (Sept. 25, 2023).

As required by the statute, Secretary Noem reviewed that designation at least 60 days before that scheduled expiration.  Following that review, on May 13, 2025, she terminated TPS for Afghanistan, effective July 14, 2025. *Termination of the Designation of Afghanistan for [TPS]*, 90 Fed. Reg. 20,309, 20,309 (May 13, 2025).  Secretary Noem explained that based on her

review and consultation with appropriate agencies, she determined that there have been notable improvements to security and the economic situation in Afghanistan such that repatriation no longer poses a threat to personal safety on account of armed conflict or extraordinary temporary conditions. *Id.* at 20,310. The Secretary cited recent reports showing "no indication of systematic or scattered combat in the country" and that "large-scale violence is at its lowest in decades." *Id.* She noted that the number of individuals in need of humanitarian assistance has decreased by over 29 million in the past year and that gross domestic product growth is on the rise. *Id.* The Secretary also determined that permitting the Afghan nationals to remain temporarily in the United States is no longer in the national interest, taking into account several relevant considerations, including that U.S. foreign policy interests are best served by "curtailing policies that facilitate or encourage destabilizing migration." *Id.* at 20,311. Weighing the putative reliance interests of those impacted by the termination decision, the Secretary concluded that they were outweighed by the overriding national interests articulated in the notice. *Id.* at 20,312.

Cameroon. On June 7, 2022, Secretary Mayorkas designated Cameroon for TPS due to "ongoing armed conflict" and "extraordinary and temporary

7

conditions." *Designation of Cameroon for [TPS]*, 87 Fed. Reg. 34,706, 34,707 (Jun. 7, 2022). He later extended and redesignated Cameroon for a period of 18 months, until June 2025. *Extension and Redesignation of Cameroon for [TPS]*, 88 Fed. Reg. 69,945, 69,945 (Oct. 10, 2023).

Following Secretary Noem's required review before that date, she terminated TPS for Cameroon, effective August 4, 2025. *Termination of the Designation of Cameroon for Temporary Protected Status*, 90 Fed. Reg. 23,697 (June 7, 2025). Based on her review and consultation with appropriate agencies, Secretary Noem determined that conditions in Cameroon "do not pose a serious threat to individual safety due to ongoing armed conflict and do not result in Cameroonians being unable to safely return." *Id.* at 23,698. The Secretary determined that the "two major conflicts" that provided the basis for the TPS designation are now "contained in limited regions that primarily impact only three of the ten regions comprising Cameroon." *Id.* "As a result," she explained, "Cameroonian aliens can return to the majority of areas in Cameroon that do not pose a serious threat to personal safety." *Id.* The Secretary also determined that "the generalized criminal activity in those regions does not form a sufficient basis for extraordinary and temporary conditions for TPS." *Id.* And regardless of whether extraordinary and

8

temporary conditions exist in Cameroon, the Secretary determined that "termination of its TPS designation is required because it is contrary to the national interest to permit Cameroonian nationals (or aliens having no nationality who last habitually resided in Cameroon) to remain temporarily in the United States." *Id.*

## III.  Procedural Background

Below, Appellant challenged the Secretary's terminations of the TPS designations for Afghanistan and Cameroon under the APA and additionally raised an equal protection challenge under the Due Process Clause of the Fifth Amendment.  D. Ct. Dkt. 41 (Am. Compl.); D. Ct. Dkt. 55 (Supp. Am Compl.). Appellant moved for partial summary judgment and for a stay of agency action under 5 U.S.C. § 705, based on its APA claims only.  D. Ct. Dkt. 42.

On July 10, 2025, the district court denied Appellant's motions for partial summary judgment and stay of agency action.  D. Ct. Dkt. 76 ("Op.").  The district court rejected the Government's jurisdictional arguments.  Op. 13-27. While the court agreed that 8 U.S.C. § 1254a(b)(5)(A) "bar[s] judicial review of the Secretary's specific determinations on TPS designations, extensions, or terminations relating to Afghanistan and Cameroon," it thought the statute "does not bar challenges to general policies, procedures, or practices used by

DHS in making TPS determinations." Op. 19. The district court cautioned that "a challenge to a TPS determination" would not fall within that narrow set of reviewable challenges "simply because it contests the process of the adjudication and whether an evidence-based determination was made," but nonetheless believed there might be room for a reviewable challenge. *Id.*

As for the APA claims at issue here, the district court observed that they "arguably advance direct challenges to the Secretary's [unreviewable] determinations to terminate the TPS designations for Afghanistan and Cameroon, including contesting Secretary Noem's analysis and ultimate conclusions." Op. 20. But the court decided to "narrowly construe[]" those claims as "limited to challenging the alleged policy or practice of making preordained determinations to terminate TPS designations in order to reduce the number of non-white immigrants in the United States," which the court viewed as reviewable and "not barred by § 1254a(b)(5)(A)." Op. 22.

Despite concluding that Appellant had plausibly pleaded a narrow claim that might be reviewable, the district court denied both summary judgment and a stay of agency action because there was insufficient evidence "to entitle [Appellant] to judgment as a matter of law at this time or … to demonstrate that they are likely to succeed on the merits." Op. 48. The district court found

that "the record reflects that the TPS notices made specific findings on the two relevant statutory bases" and discounted Appellant's "criticisms of the TPS notices' references to the national interest" because determining whether a TPS designation furthers the "national interest" is a judgment that "largely falls within the purview of the Executive Branch."  Op. 50.

While Appellant had also alleged that animus tainted the Secretary's determinations, those allegations did "not relate specifically to the TPS determinations at issue" but rather were made in the context of "assertions of general policy interest in curtailing immigration or concerns about crime by" aliens.  *Id.*  The district court also reasoned that "the executive orders referenced by the TPS notices, even while expressing a policy position that illegal immigration and migration more generally should be curtailed, notably do not preordain any particular determinations relating to TPS designations."  Op. 49.  Given this insufficient evidentiary basis, the district court denied Appellant's motions for relief on these APA claims.  Op. 51-52.

On July 13, 2025, Appellant filed a notice of appeal of the district court's order.  D. Ct. Dkt. 80.  On July 14, 2025, the district court denied Appellant's request for relief pending appeal.  D. Ct. Dkt. 79.  Appellant now seeks that

same relief twice denied below—a stay of agency action under 5 U.S.C. § 705—from this Court in the first instance.

## ARGUMENT

Appellant cannot make the required "strong showing" of success on the merits to warrant a stay, and the balance of harms and public interest further weigh against a stay. *Nken v. Holder*, 556 U.S. 418, 426, 433-34 (2009).

Indeed, the Supreme Court's order in *National TPS Alliance* compels denial of the relief sought here. *Cf. CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 230 (4th Cir. 2020) ("[E]very maxim of prudence suggests that we should decline to take the aggressive step of ruling that the plaintiffs here are in fact likely to succeed on the merits right upon the heels of the Supreme Court's stay order necessarily concluding that they were unlikely to do so"). This case is even easier than that one: there is no separate "vacatur" of an earlier extension, only a straight-up "termination" that the TPS statute plainly empowers the Secretary to undertake. And Appellant does not press on appeal any constitutional claim, only a standard APA arbitrary-and-capricious theory. But there is no serious question that the statute expressly bars judicial review of claims challenging a TPS termination as arbitrary and capricious. Even if Appellant could gerrymander a narrow theory to avoid

12

that bar, there would be no factual basis to support it—as the district court acknowledged in denying relief. And the alleged irreparable harm here is also weaker—and surely no stronger—than in *National TPS Alliance*. This Court should therefore deny relief.

## I.   THE GOVERNMENT WILL SUCCEED ON THE MERITS

### A.   Section 1254a Bars Judicial Review of Appellant's APA Claim

At the threshold, Appellant cannot show a likelihood of success on the merits because its claims are barred from judicial review. The Secretary's decision to designate or terminate a TPS designation implicates sensitive judgments as to foreign policy and the "national interest"—a discretionary determination that Congress expressly committed to her judgment. 8 U.S.C. 1254a(b)(1)(A), (b)(1)(C), (b)(3), and (b)(5)(A). The TPS statute therefore unambiguously precludes courts from second-guessing those determinations: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. 1254a(b)(5)(A). Accordingly, the district court correctly recognized that it lacked power to review "the Secretary's specific determinations on TPS designations, extensions, or terminations relating to Afghanistan and Cameroon[.]" Op. 19. That alone precludes relief here.

13

Section 1254a(b)(5)(A)'s judicial-review bar is broad. *First*, Congress prefaced "determination" with the term "any." 8 U.S.C. 1254a(b)(5)(A). As the Supreme Court explained "the word 'any' has an expansive meaning." *Patel v. Garland*, 596 U.S. 328, 338 (2022) (cleaned up). The provision thus captures determinations "of whatever kind." *Id.* *Second*, the phrase "with respect to" has "a broadening effect," as it "ensur[es] that the scope of [the] provision covers not only its subject but also matters relating to that subject." *Id.* at 339. When Congress has stripped a court of jurisdiction "in respect to" certain claims, the Supreme Court has construed that as a "broad prohibition." *United States v. Tohono O'odham Nation*, 563 U.S. 307, 312 (2011). The TPS statute thus plainly commits to the Secretary's unreviewable authority any and all determinations relating to any TPS termination. *Id.*

Reinforcing this interpretation, "the Government's political departments [are] largely immune from judicial control" in the immigration context, *Fiallo v. Bell*, 430 U.S. 787, 792 (1977), particularly when making the sort of sensitive foreign policy judgments at issue here. The Executive Branch had long exercised inherent authority to afford temporary immigration status based on its assessment of conditions in foreign states, even before there was any "specific statutory authority" for such relief. *See Hotel & Rest. Emps.*

14

*Union, Loc. 25 v. Smith*, 846 F.2d 1499, 1510 (D.C. Cir. 1988) (per curiam). That authority included the discretion "not to extend [protected] status" to a particular class of aliens, and the D.C. Circuit had recognized that such decisions were "unreviewable" by courts. *Id.* Congress legislated against that backdrop when it enacted the TPS program and codified in Section 1254a(b)(5)(A) the understanding that "[t]here is no judicial review" of such determinations. 8 U.S.C. § 1254a(b)(5)(A).

Appellant's APA claims here fall squarely within § 1254a(b)(5)(A)'s prohibition on judicial review. They are challenging, and seeking to vacate, the Secretary's "determination[s] ... with respect to the ... termination ... of a designation, of a foreign state" for TPS. 8 U.S.C. 1254a(b)(5)(A). Courts lack the authority to review or set aside those determinations.

Appellant seeks to skirt the statute by arguing that its claim challenges only collateral "practices and policies" the Secretary supposedly used in reaching her determinations. Mot. 17. That argument fails twice over. *First*, nothing in the TPS statute draws that distinction. Courts cannot review a TPS "determination" regardless of whether it is attacked on substantive or procedural grounds. The Ninth Circuit has previously rejected the analogy that Appellant draws to *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479

(1991), given that "the TPS statute … differs in both text and context" from the statute at issue there. *Ramos v. Wolf*, 975 F.3d 872, 890 (9th Cir. 2020), *vacated upon rehearing en banc*, 59 F.4th 1010, 1011 (9th Cir. 2023).

*Second*, even if some collateral procedural challenges were reviewable, Appellant's own motion shows that its claim is no such thing. Appellant is not challenging a guidance document or regulation distinct from a termination. Rather, at bottom, Appellant's claim is that the Secretary's terminations "were not based on the considerations set forth in the TPS statute[.]" Mot. 22-23; *see also* Mot. 26 ("CASA will likely be able to show that the Secretary's decision was not based on the considerations set forth in the TPS statute"). Appellant further objects to the information the Secretary used to guide her terminations. Mot. 24-25. But those are precisely the types of ordinary APA claims that fall within the core of the judicial-review bar in § 1254a(b)(5)(A). *See Ramos*, 975 F.3d at 889 (explaining that TPS statute "preclude[s] direct review of the Secretary's country-specific TPS determinations").

If Appellant's claims were permitted despite § 1254a(b)(5)(A), no APA challenge to any TPS termination would ever be barred—all a litigant would need to do is allege that the Secretary's determinations were driven by some unspoken policy. *See DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 505-507 (D.C.

Cir. 2019) (recognizing that "almost any challenge to [a determination] could be recast as a challenge to its underlying methodology").    Congress's jurisdictional limitation cannot be circumvented so easily.    Secretary Noem terminated the TPS designations for Afghanistan and Cameroon, and Congress has shielded the substance of her reasoning from judicial review. Appellant's motion fails for that reason alone.

## B.    Appellant Cannot Show a Strong Likelihood of Success on Its APA Claim

Even if a "narrow" APA claim could somehow survive the judicial-review bar, Appellant has not shown the requisite strong likelihood of success on the merits.    *See Nken*, 556 U.S. at 434.    Even the district court agreed, finding the evidence insufficient to warrant summary judgment or to show the likelihood of success required for a stay under 5 U.S.C. § 705.    *See* Op. 48-50, 52.

Consistent with the statute, Secretary Noem considered conditions in Afghanistan and Cameroon, 8 U.S.C. § 1254a(b)(1)(A), and ultimately decided that termination of TPS in both countries was warranted.    90 Fed. Reg. at 20,310-11 (Afghanistan); 90 Fed. Reg. at 23,698-99 (Cameroon).    As the district court recognized, the Federal Register notices show that the Secretary properly addressed and considered the statutory factors in doing so.    Op. 49-50 ("[T]he record reflects that the TPS notices made specific

17

findings on the two relevant statutory bases for a TPS designation."). Those factors are (1) whether requiring TPS holders to return would pose a serious threat to their personal safety due to an ongoing armed conflict, 8 U.S.C. § 1254a(b)(1)(A); (2) whether extraordinary and temporary conditions continued to exist preventing the TPS holders from returning in safety, *id.* § 1254a(b)(1)(C); and (3) whether permitting the aliens to temporarily remain is contrary to U.S. national interest, *id.*

With respect to Afghanistan, the Secretary concluded that there were "improvements in the security and economic situation such that requiring the return of Afghan nationals to Afghanistan does not pose a threat to their personal safety due to armed conflict or extraordinary and temporary conditions," and that "permitting Afghan nationals to remain temporarily in the United States is contrary to the national interest of the United States." 90 Fed. Reg. at 20,311. In support of that conclusion, the Secretary "referenced specific facts" such as "'a reported decrease in armed conflict since the end of the Tailban's insurgency,'" the "'lowest level in decades'" of "'large-scale violence,'" and "a significant decrease in the number of Afghans in need of humanitarian assistance." Op. 49 (quoting 90 Fed. Reg. at 20,310).

18

With respect to Cameroon, the Secretary concluded that conditions in Cameroon "do not pose a serious threat to individual safety due to ongoing armed conflict and do not result in Cameroonians being unable to safely return," and that "it is contrary to the national interest to permit Cameroonian nationals (or aliens having no nationality who last habitually resided in Cameroon) to remain temporarily in the United States." 90 Fed. Reg. at 23,698. The Secretary recognized that "two major conflicts" were still going, but supported her conclusion based on the specific fact that those conflicts "are contained in limited regions that primarily impact only three of the ten regions comprising Cameroon." *Id.* Based on these facts on the ground, the Secretary reasoned that "Cameroonian aliens can return to the majority of areas in Cameroon that do not pose a serious threat to personal safety." *Id.*

Appellant's claim that the Secretary's TPS terminations were based on a "preordained" directive from the President, rather than statutory factors, is thus clearly belied by the evidentiary record. It amounts to an impermissible attack on the Secretary's permissible considerations of the President's policy priorities. But "[a] change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's

reappraisal of the costs and benefits of its programs." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring in part).

More specifically, there is nothing improper, let alone arbitrary or capricious, about the Secretary's references to Executive Order No. 14,159, in the Federal Register notices, especially where the Secretary's determination required an evaluation of the "national interest," an inherently discretionary and policy-oriented standard. 8 U.S.C. § 1254a(b)(1)(C); 8 C.F.R. §§ 208.7, 274a.12(c)(8). There is no dispute that the Secretary considered, among other factors, the Administration's immigration policy prerogatives within her discretion-laden judgment as to whether the TPS designations for these two countries should be terminated. *See* 90 Fed. Reg. at 23,698 (Cameroon); 90 Fed. Reg. at 20,311 (Afghanistan). But that is exactly what our political system expects and demands. As the Supreme Court has made clear, "a court may not set aside an agency's policymaking decision solely because it may have been … prompted by Administration priorities." *Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019). Indeed, "[i]t is expected—perhaps even critical to the functioning of government—for executive officials to conform their decisions to the administration's policies." *Ramos*, 975 F.3d at 897-98. That

Appellant prefers the policy preferences of the previous administration over the current one does not make the Secretary's decision arbitrary and capricious. *See* Mot. 25-26 (invoking the former Secretary of State's views to object to the current Secretary's determinations).

In the end, the Secretary's reasoned determinations demonstrate that she considered the appropriate factors and that the two TPS terminations constitute lawful exercises of her authority to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C). Even if it were susceptible to judicial review, Appellant's policy disagreement does not create a viable APA claim, much less one with a sufficiently strong likelihood of success on the merits as to warrant the extraordinary relief sought here.

## II.   THE BALANCE OF EQUITIES DOES NOT SUPPORT RELIEF

The balance of harms and public interest also weigh against a stay. *See Nken*, 556 U.S. at 435. Most fundamentally, the Government and the public share an interest in ensuring adherence to the process established by Congress, under which the Secretary has unreviewable authority over TPS designations. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court from effectuating

21

statutes enacted by representatives of its people, it suffers a form of irreparable injury."); *Trump v. CASA, Inc.*, 2025 WL 1773631, at *14; *Miranda v. Garland*, 34 F.4th 338, 365-66 (4th Cir. 2022) ("enforcement of our immigration laws is the government's 'sovereign prerogative'").

A stay here would amount to "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-1306 (1993) (O'Connor, J., in chambers). That is especially so because the harm here arises in an area that implicates "a fundamental sovereign attribute exercised by the Government's political departments[,] largely immune from judicial control." *Fiallo*, 430 U.S. at 792. Indeed, a stay would override the Secretary's judgment that an extension of TPS is contrary to the "national interest."

On the other side of the ledger, Appellant contends that the termination is equivalent to banishment. Mot. 13. But the end of TPS's inherently *temporary* protection is not equivalent to a final removal order under 8 U.S.C. § 1229a. And, in all events, "the burden of removal alone cannot constitute the requisite irreparable injury." *Nken*, 556 U.S. at 435.

Appellant also asserts that at least some of their members face risks of harm in Afghanistan and Cameroon. Mot. 13-14. But Congress crafted other

remedies to address those individualized concerns: asylum (8 U.S.C. § 1158),
withholding of removal (8 U.S.C. § 1231(b)(3)(A)), and CAT protection
(8 U.S.C. § 1231 note; 8 C.F.R. § 1208.16-.18). Nothing prevented these
members from pursuing those protections. And nothing prevents them from
doing so now. *See* 8 C.F.R. § 1208.4(a)(5)(iv) (tolling one-year asylum bar if
applicant maintained TPS status "until a reasonable period before the asylum
application"). Congress also permits asylum applicants to obtain employment
authorization in some circumstances, 8 U.S.C. § 1158(d)(2)-(3), undermining
their claim of financial harm. Properly framed, Appellant's harm boils down
to an assertion that its members will have to pursue alternative lawful
immigration status that they could have already sought. That is an
exceedingly weak showing, particularly when everyone knew temporary
protected status could be terminated.

The Supreme Court stayed a district court's § 705 stay of Secretary
Noem's termination of Venezuela's TPS designation, necessarily concluding
that the harm to the Government when it is prevented from administering the
TPS statute outweighs harms to aliens with whose *temporary* status is
terminated (with the requisite 60 day notice period). *See Nat'l TPS Alliance*,
2025 WL 1427560 at *1. The harms identified by Appellant are certainly no

stronger than those in *National TPS Alliance*. They are arguably weaker, in that here the Secretary did not vacate prior extensions of the designations, but instead merely terminated them when they were scheduled to expire.

At minimum, Appellant's request for a universal stay under 5 U.S.C. § 705 would be improper in light of the Supreme Court's recent decision in *Trump v. CASA, Inc.*, which held that universal injunctions "fall[] outside the bounds of a federal court's equitable authority under the Judiciary Act [of 1789]." 2025 WL 1773631 at *8. That limitation on federal courts' equitable authority also constrains relief granted under 5 U.S.C. § 705.

Section 705 is equally limited by traditional principles of equity. It authorizes "all necessary and appropriate process" to postpone agency action or "preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The Supreme Court interpreted analogous language in the National Labor Relations Act—permitting "temporary relief" that a court "deems just and proper"—to "empower courts to grant equitable relief … in a manner consistent with traditional principles of equity." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (quoting 29 U.S.C. § 160(j)). Section 705's similar references to "all necessary and appropriate process" and "irreparable harm" are best understood to reference traditional

24

equitable principles, and "[n]othing" in § 705 "displaces the presumption" that "equitable principles govern" its scope. *Id.* Reflecting the remedy's equitable constraints, courts use the traditional four-part injunction test to evaluate whether to issue a § 705 stay (and Appellant invokes it here).

Thus, § 705's text, precedent, and the applicability of the injunction standard confirm that § 705 is constrained by the same traditional equitable principles as the Judiciary Act of 1789. *See CASA*, 2025 WL 1773631 at \*13. And just as those principles foreclose universal preliminary injunctions, they also foreclose universal relief under § 705. *See id.* at \*11 ("'Complete relief' is not synonymous with 'universal relief.' It is a narrower concept: The equitable tradition has long embraced the rule that courts generally may administer complete relief *between the parties*." (cleaned up)). At minimum, there is thus no basis to grant a universal stay here. *See id.* at \*13-15.

//

//

## CONCLUSION

For the foregoing reasons, the Court should deny Appellant's motion.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*
*Civil Division*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney*
*General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

WILLIAM H. WEILAND
ANNA DICHTER
CRAIG A. NEWELL, JR.
*Senior Litigation Counsels*

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
*Trial Attorney*
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4404
Email: Jeffrey.M.Hartman@usdoj.gov

ERIC SNYDERMAN
LAUREN BRYANT
AMANDA SAYLOR
CATHERINE ROSS
Dated: July 16, 2025                  *Trial Attorneys*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 27(d), I certify that the attached motion: contains one-inch margins; uses double-spaced text except as otherwise permitted; is proportionally spaced using CenturyExpd BT typeface; uses a typeface of 14 points; and contains 5,189 words, excluding any accompanying documents authorized by Rule 27(a)(2)(B). This pleading was scanned for viruses and malware by Microsoft CrowdStrike Falcon and determined to be free of malicious software.

<u>/s/ Jeffrey M. Hartman</u>
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 16, 2025, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the CM/ECF system. Appellant was served using the CM/ECF system.

<u>/s/ Jeffrey M. Hartman</u>
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation