No. 25-1792

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CASA, INC.,

*Plaintiff-Appellant*,

v.

KRISTI NOEM & UNITED STATES
DEPARTMENT OF HOMELAND SECURITY,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Maryland, Case No. 8:25-cv-1484-TDC
Before the Honorable Theodore D. Chuang

**REPLY IN SUPPORT OF APPELLANT'S EMERGENCY
MOTION FOR POSTPONEMENT OF AGENCY ACTION
PENDING APPEAL**

Ryan C. Downer
Sarah L. Bessell
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
700 14th St. #400
Washington, D.C. 20005
Tel. (202) 319-1000

Jonathan L. Backer
Rupa Bhattacharyya
Julia Gegenheimer
Mary B. McCord
Joseph Mead
Samuel P. Siegel
INSTITUTE FOR CONSTITUTIONAL
    ADVOCACY AND PROTECTION
GEORGETOWN LAW
600 New Jersey Ave. NW
Washington, D.C. 20001
Phone: (202) 661-6671

*Counsel for Plaintiff-Appellant CASA, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION ..............................................................................1

ARGUMENT .....................................................................................2

    I.    CASA Is Likely to Succeed on the Merits ...............................2

        A.  Section 1254a(b)(5)(A) Does Not Bar Review...................2

        B.  The Afghanistan and Cameroon Termination
            Decisions Were Preordained ...............................................6

    II.   The Remaining *Nken* Factors Strongly Support
         Postponement of the Terminations .......................................8

CONCLUSION ................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biden v. Texas,*
  597 U.S. 785 (2022) ................................................................. 5

*CASA de Maryland, Inc. v. Wolf,*
  486 F. Supp. 3d 928 (D. Md. 2020) ....................................... 10

*Corner Post, Inc. v. Board of Governors of Federal Reserve System,*
  603 U.S. 799 (2024) ............................................................... 13

*D.V.D v. United States Department of Homeland Security,*
  ___ F. Supp. 3d ____, No. 25-cv-10676-BEM,
  2025 WL 1495517 (D. Mass. May 26, 2025) ........................ 10

*Department of Commerce v. New York,*
  588 U.S. 752 (2019) ............................................................ 7, 8

*Department of Homeland Security v. Regents of the University of California,* 591 U.S. 1 (2020) .................................................. 6

*Heckler v. Chaney,*
  470 U.S. 821 (1985) ................................................................. 6

*Hotel & Restaurant Employees Union, Local 25 v. Smith,*
  846 F.2d 1499 (D.C. Cir. 1988) .............................................. 6

*McNary v. Haitian Refugee Center, Inc.,*
  498 U.S. 479 (1991) ................................................................. 3

*Merrill v. Milligan,*
  142 S. Ct. 879 (2022) (mem.) ............................................... 12

*National TPS Alliance v. Noem,*
  773 F. Supp. 3d 807 (N.D. Cal. 2025) .............................. 9, 12

*Noem v. National TPS Alliance,*
  No. 24A1059, 2025 WL 1427560 (U.S. May 19, 2025) (mem.) ........ 2, 11

**Page(s)**

*Ramos v. Wolf*,
   975 F.3d 872 (9th Cir. 2020) ...................................................... 4

*Reno v. Catholic Social Services, Inc.*,
   509 U.S. 43 (1993) ...................................................................... 3

*Roe v. United States Department of Defense*,
   947 F.3d 207 (4th Cir. 2020) .................................................... 11

*Saget v. Trump*,
   375 F. Supp. 3d 280 (E.D.N.Y. 2019) ........................................ 7

*Starbucks Corp. v. McKinney*,
   602 U.S. 339 (2024) .................................................................. 13

*Trump v. CASA, Inc.*,
   No. 24A884, 606 U.S. ____,
   2025 WL 1773631 (June 27, 2025) .................................... 12, 13

**Statutes**

5 U.S.C. § 705 .................................................................................. 13

8 U.S.C.
   § 1254a(a)(1) ............................................................................... 9
   § 1254a(a)(2) ............................................................................... 9
   § 1254a(b)(3) ............................................................................... 8
   § 1254a(b)(5)(A) ..................................................................... 1, 2
   § 1254a(d)(4) ............................................................................... 9
   § 1254a(f)(4) ............................................................................... 8

**Page(s)**

**Other Authorities**

90 Fed. Reg. 8443 (Jan. 20, 2025) .............................................................8

Maria Sacchetti et al., *ICE Memo Outlines Plan to
Deport Immigrants to Countries Where They Are Not Citizens*,
Wash. Post. (July 13, 2025), https://tinyurl.com/3bwc9k59 ...............10

Mark Betancourt, *Many Immigrants Don't Get the Chance to
Prove Their Fear of Torture if Deported*, NPR (June 2, 2025)
https://perma.cc/72VA-RHE4 .............................................................10

**INTRODUCTION**

This Court should postpone the terminations of the Temporary Protected Status (TPS) designations for Afghanistan and Cameroon pending resolution of this appeal. Defendants offer no persuasive reason for doing otherwise. Their threshold argument—that 8 U.S.C. § 1254a(b)(5)(A) bars review of challenges like those here—has been rejected by every court to consider it, including by the one (since-vacated) Ninth Circuit decision Defendants enlist in their support. On the merits, Defendants completely ignore the compelling evidence showing that the reasons articulated in the Federal Register notices for terminating the designations were pretextual, and that the terminations were in fact part of the Trump Administration's effort to reduce the number of non-white immigrants in this country. And Defendants do not seriously dispute that CASA's members will be harmed by the loss of TPS, which forces them to choose between leaving the United States for countries where they face serious harm or even death and staying here in a state of legal limbo.

Instead, Defendants' primary argument is that the Supreme Court's unreasoned stay decision in *Noem v. National TPS Alliance*,

No. 24A1059, 2025 WL 1427560 (U.S. May 19, 2025) (mem.), is "binding precedent" that controls the outcome of this case. Opp. 1–2. But a stay decision is not a final ruling on the merits—as the Supreme Court itself has made clear. And *National TPS Alliance* does not provide even persuasive authority for the issues presented here, as that case involved the vacatur of TPS for a different country, and the Supreme Court gave no explanation for its action. Rather than speculate as to Supreme Court's rationale, this Court should apply settled principles of administrative law—principles that make clear that postponements of the terminations are warranted.

## ARGUMENT

### I.    CASA Is Likely to Succeed on the Merits

#### A.    Section 1254a(b)(5)(A) Does Not Bar Review

Defendants argue that 8 U.S.C. § 1254a(b)(5)(A) bars review of CASA's arbitrary and capricious claims. Opp. 13–17. CASA has already explained why that is incorrect. Mot. 16–19. The word "determination" has a well-established meaning in the context of statutes barring judicial review: it prevents courts from entertaining challenges to the substance of an agency's decisions but does not preclude review of challenges to the practices and policies used when arriving at them. As the district court

2

concluded, CASA's arbitrary and capricious claims are firmly in the latter category: these claims "challeng[e] a general policy or practice to terminate TPS designations on a preordained basis in order to reduce the number of non-white immigrants in the United States." App.208-CASA. And "they are not barred by § 1254a(b)(5)(A) because they contest not 'a single act' but 'a group of decisions or a practice or procedure employed in making decisions.'" App.208-CASA (quoting *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991)).

In arguing otherwise, Defendants contend that Section 1254a(b)(5)(A)'s prohibition on review of "any determination of the [Secretary] with respect to the . . . termination" of a TPS designation "plainly commits to the Secretary's unreviewable authority any and all determinations relating to any TPS termination." Opp. 14. That assertion ignores the Supreme Court's rulings in *McNary* and *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43 (1993), which each concluded that "nearly identical" provisions allow judicial review of claims like CASA's. App.201–204-CASA. That conclusion "is bolstered by the fact that, as acknowledged by [Defendants] . . . there is no other means by

which judicial review of any aspect of a TPS designation can be advanced." App.204-CASA.

Defendants make little effort to reconcile their position with *McNary* and *Reno*. Their only response is to assert that "[t]he Ninth Circuit has previously rejected the analogy that [CASA] draws to" *McNary* in a since-vacated decision, *Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020), *vacated upon rehearing en banc*, 59 F.4th 1010 (2023) (appeal dismissed June 29, 2023). Opp. 15–16. But that decision *supports* CASA's interpretation of Section 1254a(b)(5)(A): it held that, under *McNary*, "where a court lacks jurisdiction over a challenge to the agency's actions or conduct in adjudicating a specific individual claim, it may still have jurisdiction over a broad challenge to the agency's procedures or practices." *Ramos*, 975 F.3d at 891 (cleaned up); *see also id.* at 910–911 (Christen, J., dissenting). The district court correctly held that CASA's claims are of the latter sort.

Defendants are also wrong that CASA's claims effectively seek to review the Secretary's "country-specific TPS determinations." Opp. 16 (quoting *Ramos*, 975 F.3d at 889). As the district court explained, had CASA "contest[ed] Secretary Noem's analysis and ultimate conclusions"

with respect to the terminations, its arbitrary and capricious claims would be barred.   App.207–208-CASA.   But the district court "narrowly"—and correctly—construed CASA's claims as not mounting that kind of challenge.  App. 207–208-CASA.  Instead, CASA challenges the terminations as preordained manifestations of the Trump Administration's broader policy of terminating TPS designations to reduce the number of non-white immigrants in the United States, no matter the conditions in the countries in question.  *See* App.207–208-CASA.[1]   And "[s]everal federal district courts" have concluded that similar challenges to TPS terminations are "sufficiently collateral to the determination itself" to fall outside Section 1254a(b)(5)(A)'s limit on judicial review.  App.207–209-CASA (collecting cases).

Defendants' other threshold argument—that their actions "in the immigration context" are "largely immune from judicial control," Opp. 14 (cleaned up)—is breathtakingly wrong.  Time and again, the Supreme Court has weighed in on immigration matters.  *See, e.g.*, *Biden v. Texas*, 597 U.S. 785 (2022); *Dep't of Homeland Sec. v. Regents of the Univ. of*

---

[1] The distinction drawn by the district court also illustrates that— contrary to Defendants' argument, *see* Opp. 16—there are challenges to TPS terminations that Section 1254a(b)(5)(A) bars.

*Cal.*, 591 U.S. 1 (2020).   Defendants offer no persuasive reason for charting a different course here.[2]

## B.   The Afghanistan and Cameroon Termination Decisions Were Preordained

Defendants' merits argument fundamentally misconstrues CASA's arbitrary and capricious claims.   They take refuge in what the Department of Homeland Security (DHS)'s Federal Register notices *say* motivated Secretary Noem's decisions to terminate Afghanistan's and Cameroon's TPS designations.   Opp. 18–19 (recounting the notices' discussion of the country conditions).   But the district court held that CASA adduced evidence that those decisions were in fact unlawfully "preordained"—that Secretary Noem had decided to terminate Afghanistan's and Cameroon's TPS designations based on what she interpreted as a White House directive in Executive Orders 14,159 and 14,150 to terminate all TPS designations no matter what the conditions

---

[2] *Hotel & Restaurant Employees Union, Local 25 v. Smith*, 846 F.2d 1499 (D.C. Cir. 1988) (per curiam), is of no help to Defendants.  The court there held that it lacked authority to review an agency's "discretion to suspend enforcement of a statute as to particular groups of aliens."  *Id.* at 1510. This case does not involve a decision "not to prosecute or enforce" a law, which the Supreme Court has long held is "generally committed to an agency's absolute discretion."  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

on the ground were, a directive stemming from a broader campaign to reduce the number of non-white immigrants in the United States. App.227–235-CASA.

A "reasonable and reasonably explained" agency action is still unlawful under the Administrative Procedure Act (APA) where, as here, the evidence exposes that explanation as "contrived." *Dep't of Commerce v. New York*, 588 U.S. 752, 776, 784 (2019); *see also Saget v. Trump*, 375 F. Supp. 3d 280, 347 (E.D.N.Y. 2019) (finding that "the justifications articulated" in Federal Register notice "were not the agency's actual reasons for terminating Haiti's TPS" but were instead "reverse engineered . . . to achieve a desired political outcome: the termination of Haiti's TPS," the product of an "outcome-determinative process" violative of "the mandatory periodic review process of the TPS statute"). The relevant question here is one of degree: whether the evidence identified at this early stage in the litigation establishes that CASA is likely to prevail on its claims that Secretary Noem terminated Afghanistan's and Cameroon's TPS designations on a pretextual basis. CASA has met that standard, Mot. 22–26, and Defendants completely fail to grapple with the evidence supporting its claims.

Defendants also miss the point with regard to DHS's invocation of Executive Order 14,159. Opp. 19–21. CASA does not dispute that an agency may take "Administration[] priorities" into account where they are relevant to the statutory charge in question. *Dep't of Commerce*, 588 U.S. at 781. But the Administration's interest in reducing the "presence of illegal aliens in the United States," Exec. Order 14,159, 90 Fed. Reg. 8443, 8446 (Jan. 20, 2025), has nothing to do with the criteria that are supposed to inform TPS termination decisions—conditions on the ground in the countries in question, 8 U.S.C. § 1254a(b)(3). Indeed, that interest is irrelevant because TPS holders have "lawful status as ... nonimmigrant[s]." *Id.* § 1254a(f)(4). As the district court explained, this "'mismatch between the decision the Secretary made and the rationale she provided'" is one piece of evidence (among many others) that her decisions were "pretextual or contrived." App.230–231-CASA (brackets omitted) (quoting *Dep't of Commerce*, 588 U.S. at 783).

## II. The Remaining *Nken* Factors Strongly Support Postponement of the Terminations

Defendants do not seriously dispute that the Afghanistan and Cameroon terminations will have devastating consequences for CASA members' lives and livelihoods. *See* Mot. 13–14. Instead, they argue that

CASA's members are not harmed because TPS's protections are "not equivalent to a final removal order."  Opp. 22.  But the practical reality is that TPS affords recipients the ability to *lawfully* stay and work in this country, and to be free from detention on the basis of their immigration status.  *See* 8 U.S.C. § 1254a(a)(1)–(2), (d)(4).  Absent postponement of the terminations, CASA's members face a Hobson's Choice:  uproot their lives and return to a country where they may be harmed or even killed, or stay here in a state of legal limbo.

Defendants also downplay the harm of their actions by arguing that some of CASA's members could avail themselves of other forms of immigration relief.  Opp. 22–23.  But protections such as asylum or withholding of removal are not true "alternative[s]" to TPS.  Opp. 23.  Making a claim for asylum, for instance, is a complicated, often years-long process.  *See Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807, 836 (N.D. Cal. 2025) (describing asylum seekers waiting years for adjudication, "consistent with the well-documented backlogs in the immigration system," and noting that asylum and parole "do not provide the same protections as TPS" (cleaned up)).  Even TPS holders who qualify for asylum will find those protections unattainable should they lose work

9

authorization during the long process of pursuing a claim. *See CASA de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 968–969 (D. Md. 2020) (describing diminished ability to apply and wait for asylum without work authorization), *order dissolved*, 2023 WL 3547497 (D. Md. May 18, 2023).

In any event, Defendants have routinely placed these other protections increasingly out of reach. *See D.V.D v. U.S. Dep't of Homeland Sec.*, ___ F. Supp. 3d ____, No. 25-cv-10676-BEM, 2025 WL 1495517, at *7 (D. Mass. May 26, 2025) (government "did not include a meaningful opportunity for the class members to present fear-based claims" when it gave less than 24 hours' notice before removing individuals to South Sudan); Mark Betancourt, *Many Immigrants Don't Get the Chance to Prove Their Fear of Torture if Deported*, NPR (June 2, 2025), https://perma.cc/72VA-RHE4; Maria Sacchetti et al., *ICE Memo Outlines Plan to Deport Immigrants to Countries Where They Are Not Citizens*, Wash. Post. (July 13, 2025), https://tinyurl.com/3bwc9k59 (reporting on plan to remove individuals with withholding of removal to third countries). The remote—and, in many cases, illusory—possibility of such protections cannot remedy harms inflicted by the terminations of the TPS designations for Afghanistan and Cameroon. For TPS holders,

TPS is the bird in hand: it provides them security while they seek—if they choose—other, more permanent forms of lawful status.

Next, Defendants argue that the balance of the equities and the public interest weigh in their favor because "the Secretary has unreviewable authority over TPS designations," and that "[a] stay here would amount to an improper intrusion by a federal court into the workings of a coordinate branch of the Government." Opp. 21–22 (cleaned up). Those arguments simply assume Defendants are correct on the merits. For the reasons explained, *see* pp. 2–6, *supra*, they are not. And neither Defendants nor the public suffer any harm from an order requiring Defendants to "follow the law." *Roe v. U.S. Dep't of Def.*, 947 F.3d 207, 230–231 (4th Cir. 2020) (cleaned up).

Defendants are also wrong that the Supreme Court's stay decision in *Noem v. National TPS Alliance*, No. 24A1059, 2025 WL 1427560 (U.S. May 19, 2025) (mem.), demonstrates that the Court "necessarily conclude[ed] that the harm to the Government when it is prevented from administering the TPS statute outweighs harms to aliens whose temporary status is terminated." Opp. 23 (emphasis omitted). The Court offered no reasoning in issuing its decision. Whatever its reasons for

granting a stay in that case—which concerned DHS's attempt to vacate (not terminate) the TPS designation of a different country (Venezuela) in the middle of an extended designation period, *see Nat'l TPS All.*, 773 F. Supp. 3d at 814—the Court's preliminary views, rendered on a truncated timeline with limited briefing and no oral argument, do not forecast how it would evaluate the balance of the equities—or any other issue—in this case. *See Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (mem.) (Kavanaugh, J., concurring) ("[A] stay order is not a ruling on the merits, but instead simply stays the District Court's injunction *pending a ruling on the merits*.").

Finally, Defendants read too much into the Supreme Court's recent decision in *Trump v. CASA, Inc.*, No. 24A884, 606 U.S. \_\_\_\_, 2025 WL 1773631 (June 27, 2025), in arguing that the decision renders CASA's stay request "improper." Opp. 24–25. *CASA* held only that the federal government was likely to succeed on its argument that the Judiciary Act of 1789 did not grant lower courts the authority to issue "universal injunctions." 2025 WL 1773631, at *6. It specifically reserved the question of "whether the Administrative Procedure Act authorizes

federal courts to vacate federal agency action." *Id.* at *8 n.10.[3]  And in his concurrence, Justice Kavanaugh emphasized that nothing about the Court's ruling prevents lower courts from granting "the functional equivalent of a universal injunction . . . by preliminarily setting aside or declining to set aside an agency rule under the APA." *Id.* at *21 (Kavanaugh, J., concurring).  The questions surrounding universal injunctions outside of the APA context simply do not apply to 5 U.S.C. § 705's congressionally conferred and narrower remedy.  *See also Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 838 (2024) (Kavanaugh, J., concurring) (while "background equitable principles may control in . . . non-APA cases," "in the APA, Congress did in fact depart from that baseline").

---

[3] Defendants' reliance on *Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024), Opp. 24–25, is similarly misplaced.  The Court there held that statutory authority granting district courts authority to provide "just and proper" temporary relief incorporated traditional equitable principles. *McKinney*, 602 U.S. at 347–348.  It did not discuss the distinct question of whether relief that affects parties not before the court is available under the APA.

## CONCLUSION

This Court should grant a postponement of the terminations of the

TPS designations for Afghanistan and Cameroon pending appeal.

July 17, 2025                          Respectfully submitted,

                                       /s/ Jonathan L. Backer
Ryan C. Downer                        Jonathan L. Backer
Sarah L. Bessell                      Rupa Bhattacharyya
WASHINGTON LAWYERS' COMMITTEE          Julia Gegenheimer
FOR CIVIL RIGHTS AND URBAN             Joseph W. Mead
AFFAIRS                               Mary B. McCord
700 14th St. #400                     Samuel P. Siegel
Washington, D.C. 20005                INSTITUTE FOR CONSTITUTIONAL
Tel. (202) 319-1000                   ADVOCACY AND PROTECTION
                                      Georgetown University Law
                                      Center
                                      600 New Jersey Ave., N.W.
                                      Washington, D.C. 20001
                                      Phone: (202) 661-6671

                                      *Counsel for Plaintiff-Appellant
                                      CASA, Inc.*

14

## CERTIFICATE OF COMPLIANCE

I hereby certify that this response complies with the type-volume requirements of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,594 words. This response was prepared in 14-point Century Schoolbook font, a proportionally spaced typeface, using Microsoft Word.

<u>/s/ Jonathan L. Backer</u>
Jonathan Backer
*Counsel for Plaintiff-Appellant CASA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Jonathan L. Backer
Jonathan Backer
*Counsel for Plaintiff-Appellant CASA, Inc.*